# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

ZURU (SINGAPORE) PTE., LTD;  )
ZURU INC.,                   )
                             )
    Plaintiffs,              )
                             )
  v.                         )      Case No.:
                             )
THE INDIVIDUALS, CORPORATIONS, LIMITED  )
LIABILITY COMPANIES, PARTNERSHIPS, AND  )
UNINCORPORATED ASSOCIATIONS  )
IDENTIFIED ON SCHEDULE A HERETO,  )
                             )
    Defendants.              )
                             )
                             )
                             )
_____)

## COMPLAINT

Plaintiffs ZURU Inc and ZURU (Singapore) PTE., Ltd. (together "Plaintiffs"), hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on **Schedule A** attached hereto (collectively, "Defendants"):

## Introduction

1.    This action has been filed by Plaintiffs to combat online counterfeiters who trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with both the Plaintiffs' ROBO FISH trademark, which is covered by U.S. Trademark Registration No. 4440702 and ROBO ALIVE trademark, which is covered by U.S. Trademark Registration No. 5294215 (together, the "ROBO FISH Trademarks"); as well as two of Plaintiffs' copyrights, which are covered by U.S. Copyright Office Registrations No. VA 2-249-214 and No. VA 2-248-953 (together, the "ROBO FISH Copyright Registrations").

1

2.      The registrations are valid, subsisting, and in full force and effect. True and correct copies of the federal trademark registration certificates for the ROBO FISH Trademarks are attached hereto as **Exhibit 1**.  True and correct copies of the federal copyright registration certificates for the ROBO FISH Copyright Registrations are attached hereto as **Exhibit 2**.

3.      Defendants are improperly advertising, marketing and/or selling unauthorized and illegal products (the "Counterfeit Products") infringing upon Plaintiffs' ROBO FISH Trademarks and ROBO FISH Copyright Registrations, by selling Counterfeit Products that purport to be genuine and authorized products using the ROBO FISH Trademarks and ROBO FISH Copyright Registrations (the "ROBO FISH Products"), which causes further confusion and deception in the marketplace.

4.      The Defendants create numerous fully interactive commercial internet stores operating under the online marketplace accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"), including on the platforms Wish.com ("Wish"), Amazon.com ("Amazon"), and eBay.com ("eBay").

5.      The Defendants design the Defendant Internet Stores to appear to be selling genuine Plaintiff products, while selling inferior imitations of Plaintiffs' products.

6.      The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

7.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' registered trademarks and copyrights, as well as to protect unknowing consumers from purchasing Counterfeit Products.

CSDOCS/41289083v1

8.      As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks and copyrights and, therefore, seek injunctive and monetary relief.

## Subject Matter Jurisdiction

9.      This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

10.      This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

11.      This Court has jurisdiction over the unfair deceptive trade practices claims in this action that arise under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

## Personal Jurisdiction and Venue

12.      Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(1)(3), or in the alternative, Fed. R. Civ. P. 4(k) because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York and in this Judicial District, and/or derive substantial revenue from business transactions in New York and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

13.      In addition, Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in New York and in this Judicial District such that Defendants

CSDOCS/41289083v1

should reasonably expect such actions to have consequences in New York and this judicial District.

14.     For example, Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to New York addresses located in this Judicial District. Screen shots of the shopping cart from Defendant Internet Stores allowing Counterfeit Products to be shipped to Manhattan are attached to the Declaration of Stephen Drysdale ("Drysdale Decl."), filed contemporaneously herewith, as **Exhibit 2**.

15.     Moreover, upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in New York, in this Judicial District, through accounts (the "User Account(s)") with online marketplace platforms such as Wish, as well as any and all as yet undiscovered User Accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including New York (and more particularly, in this Judicial District), can view the marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products, and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including New York (and more particularly, in this Judicial District).

a.     Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of copyright infringement in this Judicial District, do substantial business in the Judicial District, and have registered agents in this Judicial District.

4

**The Plaintiffs**

17.     Plaintiff ZURU (Singapore) PTE., Ltd. is a Singapore entity and is the registered owner of both the ROBO FISH Trademarks referred to above and with their federal registrations attached as Exhibit 1 and the ROBO FISH Copyright Registrations referred to above and with their federal registrations attached as Exhibit 2.

18.     Plaintiff ZURU LLC is a limited liability company organized under the laws of Oregon with offices in El Segundo, California.

19.     Plaintiff, ZURU Inc., ZURU INC. is a corporation incorporated under the law of the British Virgin Islands and a Hong Kong registered company with offices in Kowloon, Hong Kong. Plaintiff Zuru Inc. has received an exclusive license and grant of all rights in this action for the ROBO FISH Trademarks and ROBO FISH Copyright Registrations from ZURU (Singapore) PTE, Ltd.

**The Defendants**

20.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions.

21.     Defendants are merchants on the Wish, Amazon, and eBay online marketplace platforms.

**The Robo Fish Intellectual Property and Products**

22.     Plaintiffs ZURU (Singapore) PTE, Ltd. and ZURU INC. are members of the ZURU Group of companies, which has grown into a diversified global enterprise (collectively "ZURU"). ZURU has earned an international reputation for quality, reliability and value and is credited for many breakthroughs that have occurred in the toy industry. ZURU is an exclusive licensee and official source of ROBO FISH Products in the United States, which include the following:





CSDOCS/41289083v1





CSDOCS/41289083v1

23.     Since at least August 2011, the ROBO FISH mark is and has been the subject of substantial and continuous marketing and promotion by Plaintiffs. The ROBO ALIVE mark has been the subject of substantial and continuous marketing and promotion by Plaintiffs since at least June 2016.  Plaintiffs have and continue to widely market and promote the ROBO FISH Trademarks in the industry and to consumers. Plaintiffs' promotional efforts include — by way of example but not limitation — substantial print media, the ROBO FISH Products' website and social media sites, and point of sale materials.

24.     Both of the ROBO FISH Trademarks are distinctive and identify the merchandise as goods from Plaintiffs. The registrations for the ROBO FISH Trademarks constitute *prima facie* evidence of their validity and of Plaintiffs' exclusive right to use those trademarks pursuant to 15 U.S.C. § 1057(b).

25.     The ROBO FISH Trademarks qualify as famous marks, as that term is used in 15 U.S.C. §1125 (c)(1), and have been continuously used and never abandoned.

26.     Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the ROBO FISH Trademarks. As a result, products bearing either or both of the ROBO FISH Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiffs.

27.     Plaintiff ZURU INC. owns all exclusive rights, including without limitation the rights to reproduce the copyrighted works in copies, to prepare derivative works based upon the copyrighted works, and to distribute copies of the copyrighted works to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the ROBO FISH Products as the exclusive licensee of ZURU Singapore Pte., Ltd, including without limitation copyrights covered by the ROBO FISH Copyright Registrations.

8

28.     Exemplary images from the deposit documents filed with the Copyright

Office for the ROBO FISH sculptures are as follows:



**The Defendants' Unlawful Conduct**

29.     The success of the ROBO FISH brand has resulted in significant

counterfeiting.

30.     Plaintiffs have identified numerous Defendant Internet Stores linked to

fully interactive websites and marketplace listings on platforms such as EBay, Amazon

CSDOCS/41289083v1

and Wish, which were offering for sale, selling, and importing Counterfeit Products to consumers in this Judicial District and throughout the United States.

31.     Bad actors have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.

32.     In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

33.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine ROBO FISH Products.

34.     Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

35.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

36.     Plaintiffs have not licensed or authorized Defendants to use the ROBO FISH Trademarks or ROBO FISH Copyright Registrations, and none of the Defendants are authorized retailers of genuine ROBO FISH Products.

37.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the ROBO FISH Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for ROBO FISH Products.

38.     Additionally, upon information and belief, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine ROBO FISH Products.

39.     Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable the Defendant Internet Stores owned and/or operated by Defendants that are the means by which the Defendants could continue to sell Counterfeit Products into this Judicial District.

40.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using the ROBO FISH Copyright Registrations without authorization within the product descriptions of their Defendant Internet Stores to attract customers.

41.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states, as Defendants here have done.

42.     On personal knowledge and belief, Defendants regularly create new websites and Online Marketplace Accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common

11

tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

43.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores.   For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the Defendant Internet Stores.

44.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

45.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

46.     In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

_____

[1] https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites")(last visited April 9, 2021).

12

47.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

48.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

49.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

50.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

51.     Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the ROBO FISH Trademarks and ROBO FISH Copyright Registrations in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and New York over the Internet.

---

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited April 9, 2021).

CSDOCS/41289083v1

52.     Each Defendant Internet Store offers shipping to the United States, including New York and, on information and belief, each Defendant has offered to sell Counterfeit Products into the United States, including New York.

53.     Defendants' use of the ROBO FISH Trademarks and ROBO FISH Copyright Registrations in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into New York, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

39.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the ROBO FISH Copyright Registrations and ROBO FISH Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the ROBO FISH Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

54.     Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and the ROBO FISH Products.

**FIRST CAUSE OF ACTION**

**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

**[Against Defendants Designated in Schedule A]**

55.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1-54 of this Complaint.

56.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered ROBO FISH

14

Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The ROBO FISH Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' products provided under the ROBO FISH Trademarks.

57.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with either one or both of the ROBO FISH Trademarks without Plaintiffs' permission.

58.     Plaintiff ZURU (Singapore) PTE., Ltd. is the registered owner of both the ROBO FISH Trademarks and Plaintiff ZURU Inc. is the exclusive licensee and official source of ROBO FISH Products. The United States Registrations for the ROBO FISH Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the ROBO FISH Trademarks and are willfully infringing and intentionally using counterfeits of the ROBO FISH Trademarks. Defendants' willful, intentional, and unauthorized use of the ROBO FISH Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

59.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1117.

60.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

61.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known ROBO FISH Trademarks.

## SECOND CAUSE OF ACTION

### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

**[Against Defendants Designated in Schedule A]**

62.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1-61 of this Complaint.

63.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

64.     By using the ROBO FISH Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

65.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the cou Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

66.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

### THIRD CAUSE OF ACTION
### COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 101, et seq.)

**[Against Defendants Designated in Schedule A]**

67.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1-66 of this Complaint.

68.     Plaintiffs ZURU LLC and ZURU Inc. own all exclusive rights, including without limitation the rights to reproduce the copyrighted work in copies, to prepare

16

derivative works based upon the copyrighted work, and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending, in various copyrights for the ROBO FISH products as the exclusive licensee of ZURU (Singapore) Pte., Ltd, including without limitation copyrights covered by the ROBO FISH Copyright Registrations.

69. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the ROBO FISH copyrights without Plaintiffs' permission.

70. Defendants had access to the ROBO FISH products incorporating Plaintiffs' registered copyrights before Defendants created their Defendant Internet Stores.

71. Upon information and belief, Defendants have directly copied Plaintiffs' copyrights for the ROBO FISH products. Alternatively, Defendants' representations of Plaintiffs' copyrights for the ROBO FISH products in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiffs' copyrights for the ROBO FISH products and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiffs' copyrights for the ROBO FISH products. As just one example, Defendants deceive unknowing consumers by using the ROBO FISH copyrights without authorization within the product descriptions of their Defendant Online Store to attract customers as follows:

CSDOCS/41289083v1



Exemplary Images of Plaintiff's Registered Copyright Works



Image of Counterfeit RoboFish Product on a Defendant Online Store

72.     Defendants' exploitation of Plaintiffs' copyrights for the ROBO FISH products in the Defendant Internet Stores constitutes infringement of Plaintiffs' copyrights for the ROBO FISH products.

73.     On information and belief, Defendants' infringing acts were willful, deliberate, and committed with prior notice and knowledge of Plaintiffs' copyrights. Each Defendant willfully, wantonly, and in conscious disregard and intentional indifference to the rights of Plaintiffs made and distributed in the United States, including this District, caused to be made and distributed in the United States, including this

CSDOCS/41289083v1

District, and aided, abetted, contributed to, and participated in the unauthorized making and distribution of the infringing Defendant Online Stores. Each Defendant either knew, or should have reasonably known, that Plaintiffs' ROBO FISH products were protected by copyright and their representations infringed on Plaintiffs' copyrights. Each Defendant continues to infringe upon Plaintiffs' rights in and to the copyrighted work.

74.      As a direct and proximate result of their wrongful conduct, Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiffs. Accordingly, Plaintiffs seek an award of damages pursuant to 17 U.S.C. § 504.

75.      In addition to Plaintiffs' actual damages, Plaintiffs are entitled to receive the profits made by the Defendants from their wrongful acts, pursuant to 17 U.S.C. § 504(b). Each Defendant should be required to account for all gains, profits, and advantages derived by each Defendant from their acts of infringement.

76.      In the alternative, Plaintiffs are entitled to, and may elect to choose statutory damages pursuant to 17 U.S.C. § 504(c), which should be enhanced by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement.

77.      Plaintiffs are entitled to, and may elect to choose, injunctive relief under 17 U.S.C. § 502, enjoining any use or exploitation by Defendants of their infringing work and for an order under 17 U.S.C. § 503 that any of Defendants' infringing products be impounded and destroyed.

78.      Plaintiffs seek and is also entitled to recover reasonable attorneys' fees and costs of suit pursuant to 17 U.S.C. § 505.

79.      Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known ROBO FISH copyrights.

CSDOCS/41289083v1

## FOURTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (New York Common Law)
### [Against Defendants Designated in Schedule A]

80.     Plaintiffs repeat and incorporate by reference herein its allegations contained in paragraphs 1-79 of this Complaint.

81.     Plaintiffs have not licensed or authorized Defendants to use the ROBO FISH Trademarks or ROBO FISH copyrights, and none of the Defendants are authorized retailers of genuine ROBO FISH Products.

82.     Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' ROBO FISH trademarks and copyrights.

83.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

84.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of Counterfeit Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

85.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking ROBO FISH Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

86.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple

fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

87.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

1.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      a.     using the ROBO FISH Trademarks or ROBO FISH Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ROBO FISH Product or is not authorized by Plaintiffs to be sold in connection with the ROBO FISH Trademarks or ROBO FISH Registered Copyright Registrations;

      b.     passing off, inducing, or enabling others to sell or pass off any product as a genuine ROBO FISH Product or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and

21

approved by Plaintiffs for sale under the ROBO FISH Trademark or ROBO FISH Copyright Registrations;

c.     committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.     further infringing the ROBO FISH Trademarks or ROBO FISH Copyright Registrations and damaging Plaintiffs' goodwill;

e.     otherwise competing unfairly with Plaintiffs in any manner;

f.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any Plaintiff trademark or copy any Plaintiff copyright, including the ROBO FISH Trademarks or ROBO FISH Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof;

g.     using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is the means by

CSDOCS/41289083v1

which Defendants could continue to sell Counterfeit Products; and

h.    operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing either or both of the ROBO FISH Trademarks or ROBO FISH Copyright Registrations or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine ROBO FISH Product or not authorized by Plaintiffs to be sold in connection with the ROBO FISH Trademarks or ROBO FISH Copyright Registrations.

2.    Entry of an Order that Wish, Amazon, and eBay, and any other online marketplace account provider through which Counterfeit Products are being sold by Defendants:

a.    disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A to the Complaint;

b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

c.    take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A to the Complaint from

CSDOCS/41289083v1

displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

3.      That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the ROBO FISH Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

4.      In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the ROBO FISH Trademarks and statutory damages of not less than $750 and not more than $30,000 for each and every infringement of Plaintiffs' copyrights pursuant to 17 U.S.C. § 504(c), which should be enhanced to a sum of not more than $150,000 by 17 U.S.C. § 504(c)(2) because of Defendants' willful copyright infringement;

5.      That Plaintiffs be awarded their reasonable attorneys' fees and costs; and

6.      Award any and all other relief that this Court deems just and proper.

Dated:      August 5, 2021                     Respectfully submitted,

                                              COLE SCHOTZ P.C.


                                              By:___*/s/ Michael R. Yellin*___
                                                    Michael R. Yellin
                                                    1325 Avenue of the
                                                    Americas
                                                    19th Floor
                                                    New York, New York
                                                    10017
                                                    (201) 525-6258
                                                    myellin@coleschotz.com

                                                    -and-

CSDOCS/41289083v1

THOITS LAW
Andrew P. Holland, Esq.
    *Pro Hac Vice*
    *Application*
    *Forthcoming*
400 Main Street, Suite 250
Los Altos, CA 94022
(650) 327-4200
aholland@thoits.com

Attorneys for Plaintiffs,
ZURU Inc., ZURU LLC
and ZURU (Singapore)
PTE., Ltd.

CSDOCS/41289083v1