UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZURU (SINGAPORE) PTE, LTD.; <br> ZURU INC., <br> <br> Plaintiffs, <br> <br> v. <br> <br> THE INDIVIDUALS, CORPORATIONS, <br> LIMITED LIABILITY COMPANIES, <br> PARTNERSHIPS, AND <br> UNINCORPORATED ASSOCIATIONS <br> IDENTIFIED ON SCHEDULE A HERETO, <br> <br> Defendants. | Case No.: 1:21-cv-06646 <br> <br> Judge Jesse M. Furman |

## ~~PROPOSED~~ DEFAULT JUDGMENT FOR DEFENDANTS

## <u>QUEFEI TRADING AND WOLOVER</u>

THIS CASE having been commenced by ZURU (SINGAPORE) PTE., LTD. and ZURU INC. (collectively "<u>Plaintiffs</u>") against Defendants Quefei Trading (143) and WoLover (148) (collectively, the "<u>Defaulting Defendants</u>") and using at least the domain names identified in the Defaulting Defendants list (the "<u>Defaulting Defendant Domain Names</u>") and the online marketplace accounts identified in the Defaulting Defendants list (the "<u>Defaulting Online Marketplace Accounts</u>"), and Plaintiffs having moved for entry of Default and Default Judgment against Defaulting Defendants;

This Court having entered, upon a showing by Plaintiffs, a temporary restraining order and preliminary injunction against Defaulting Defendants that included a domain name disabling order and asset restraining order;

Plaintiffs having properly completed service of process on Defaulting Defendants, the combination of providing notice via electronic publication or email, along with any notice that Defaulting Defendants received from domain name registrars and payment processors, being

1

notice reasonably calculated under all circumstances to apprise Defaulting Defendants of the pendency of the action and affording them the opportunity to answer and present their objections; and

None of the Defaulting Defendants having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT FURTHER FINDS that it has personal jurisdiction over the Defaulting Defendants because the Defaulting Defendants directly target their business activities toward consumers in the United States, including New York, offering to sell and ship products into this Judicial District.  Specifically, Defaulting Defendants are reaching out to do business with New York residents by operating one or more commercial, interactive Internet Stores through which New York residents can purchase products bearing counterfeit versions of products utilizing either one or both of the ROBO FISH Trademark, U.S. Trademark Registration No.: 4440702, and/or ROBO ALIVE Trademark, U.S. Trademark Registration No.: 5294215 (together, the "ROBO FISH Trademarks") and/or copyrights covered by U.S. Copyright Office Registration Nos. VA 2-249-214 and VA 2-248-953 (the "ROBO FISH Copyright Registrations"); and

THIS COURT FURTHER FINDS that Defaulting Defendants are liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), copyright infringement (17 U.S.C. § 101 et seq.), and/or violation of unfair competition under New York common law.

IT IS HEREBY ORDERED that Plaintiffs' Motion for Entry of Default and Default Judgment is GRANTED in its entirety, that Defaulting Defendants are deemed in default and that this Default Judgment is entered against Defaulting Defendants.

Accordingly, this Court ORDERS that:

1.   Defaulting Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be permanently enjoined and restrained from:

a. using Plaintiffs' ROBO FISH Trademarks, ROBO FISH Copyright Registration, or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine ROBO FISH product or not authorized by Plaintiffs to be sold in connection with Plaintiffs' ROBO FISH Trademarks and/or ROBO FISH Copyright Registration;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine ROBO FISH product or any other product produced by Plaintiffs, that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under Plaintiffs' ROBO FISH Trademarks and/or ROBO FISH Copyright Registration;

c. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d. further infringing Plaintiffs' ROBO FISH Trademarks and/or ROBO FISH Copyright Registration and damaging Plaintiffs' goodwill;

e. otherwise competing unfairly with Plaintiffs in any manner;

f. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which bear any of Plaintiffs' ROBO FISH Trademarks and/or

      ROBO FISH Copyright Registration or any reproductions, counterfeit copies, or colorable imitations thereof;

  g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit ROBO FISH products; and

  h. operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiffs' ROBO FISH Trademarks and/or ROBO FISH Copyright Registration or any reproductions, counterfeit copies, or colorable imitations thereof that is not a genuine ROBO FISH product or not authorized by Plaintiffs to be sold in connection with Plaintiffs' ROBO FISH Trademarks and/or ROBO FISH Copyright Registration.

  2. The domain name registries for the Defaulting Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable the Defaulting Defendant Domain Names and make them inactive and untransferable until further ordered by this Court.

  3. Those in privity with Defaulting Defendants and with actual notice of this Order, including any online marketplaces such as Amazon, eBay, PayPal, Wish, or Payoneer, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defaulting Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

      a.     disable and cease providing services for any accounts through which Defaulting Defendants engage in the sale of counterfeit and infringing goods using the ROBO FISH Trademarks and/or Copyright Registration, including any accounts associated with the Defaulting Defendants listed on the First Amended Schedule A;

      b.     disable and cease displaying any advertisements used by or associated with Defaulting Defendants in connection with the sale of counterfeit and infringing goods using the ROBO FISH Trademarks and/or Copyright Registration; and

      c.     take all steps necessary to prevent links to the Defaulting Defendant Domain Names identified on the First Amended Schedule A from displaying in search results, including, but not limited to, removing links to the Defaulting Defendant Domain Names from any search index.

4.     Amazon.com and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts, or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

5.     ContextLogic, Inc. ("Wish") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts, or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

6.     PayPal, Inc. ("PayPal") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts, or Defaulting

Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

7. Payoneer, Inc. ("Payoneer") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

8. eBay, Inc. ("eBay") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

9. Ping Pong Global Solutions, Inc. ("Ping Pong") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

10. Coinbase Global, Inc. ("Coinbase") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

11. LianLian Global t/as LL Pay U.S., LLC ("LianLian") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

12. AllPay Limted ("AllPay") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

13. Union Mobile Financial Technology Co., Ltd. ("Union Mobile") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

14. Alibaba and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts or Defaulting Defendants' websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendants' assets.

15. Pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504, Plaintiffs are awarded statutory damages from each of the Defaulting Defendants in the amount of fifty thousand dollars ($50,000.00). This award shall apply to each distinct Defaulting Defendant only once, even if they are listed under multiple different aliases in the Complaint and Schedule A.

16. All monies currently restrained in Defaulting Defendants' financial accounts, including monies held by Amazon, PayPal, eBay, Wish, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, and/or Alibaba are hereby released to Plaintiffs as partial payment of the above-identified damages, and PayPal, Amazon, eBay, Wish, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, and/or Alibaba are ordered to release to Plaintiffs the amounts from Defaulting Defendants' accounts within ten (10) business days of receipt of this Order.

17. Until Plaintiffs have recovered full payment of monies owed by any Defaulting Defendant, Plaintiffs shall have the ongoing authority to serve this Order on PayPal, Amazon,

eBay, Wish, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, and/or Alibaba in the event that any new accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, PayPal, Amazon, eBay, Wish, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, and/or Alibaba shall within two (2) business days:

    a.    Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts, or Defaulting Defendants' websites, including, but not limited to, any accounts;

    b.    Restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendants' assets; and

    c.    Release all monies restrained in Defaulting Defendants' accounts to Plaintiffs as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

18.    Until Plaintiffs have recovered full payment of monies owed by any Defaulting Defendant, Plaintiffs shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendants are identified. Upon receipt of this Order, the Financial Service Providers shall within two (2) business days:

    a.    Locate all accounts and funds connected to Defaulting Defendants, Defaulting Defendants' Online Marketplace Accounts, or Defaulting Defendants' websites, including, but not limited to, any accounts;

    b.    Restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendants' assets; and

      c.      Release all monies restrained in Defaulting Defendants' accounts to Plaintiffs as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

19. In the event that Plaintiffs identify any additional online marketplace accounts, domain names, or financial accounts owned by Defaulting Defendants, Plaintiffs may send notice of any supplemental proceeding to Defaulting Defendants by email at the email addresses identified by Plaintiffs and any email addresses provided for Defaulting Defendants by third parties.

20. The five thousand-dollar ($5,000) bond posted by Plaintiffs, including any interest minus the registry fee, will be released to Plaintiffs or their counsel upon notice to the Court that all non-defaulting defendants have been dismissed from the case. The Clerk of the Court is directed to return the bond previously deposited with the Clerk of the Court to Plaintiffs or its counsel once such notice is provided.

Dated: February 9, 2022

_____
United States District Judge

The Clerk of Court is directed to terminate ECF No. 64 and to close the case. SO ORDERED.

**DEFAULTING DEFENDANTS**

| No. | Defendants |
|---|---|
| 143 | Quefei Trading |
| 148 | WoLover |

| No. | Defendants Online Marketplace |
|---|---|
| 143 | https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=&isCBA=&marketplaceID=ATVPDKIKX0DER&orderID=&protocol=current&seller=A2LBWMDAE5XU8X&sshmPath= |
| 148 | https://www.amazon.com/sp?_encoding=UTF8&asin=&isAmazonFulfilled=1&isCBA=&marketplaceID=ATVPDKIKX0DER&orderID=&protocol=current&seller=A2C65JTISFTDR1&sshmPath= |